Court of Appeal Case No. 12-17816

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

JACK E. WHATLEY,
Plaintiff and Appellant
vs.
BANK OF AMERICA, N.A., et al
Defendants and Respondents.

———————————

Appeal from the United States District Court, Eastern District
Case No.: 2:11-cv-02901-MCE-GGH
Honorable Morrison C. England, Judge Presiding

———————————

# BRIEF OF APPELLANT

———————————

JOHN S. SARGETIS (CA Bar No. 80630)
jsargetis@unitedlawcenter.com
UNITED LAW CENTER
3013 Douglas Blvd., Suite 200
Roseville, CA 95661
Tel:  (916) 367-0630
Fax: (916) 265-9000
Attorney for Appellant/Plaintiff
Jack E. Whatley

## CORPORATE DISCLOSURE STATEMENT REQUIRED BY
## RULE 26.1, FRAP

Plaintiffs and Appellants are not a corporation.

Dated:  October 25, 2013                Respectfully submitted,

                                        UNITED LAW CENTER


                                        By:   /s/ John S. Sargetis
                                        JOHN S. SARGETIS (CA Bar No. 80630)
                                        jsargetis@unitedlawcenter.com
                                        UNITED LAW CENTER
                                        3013 Douglas Blvd., Suite 200
                                        Roseville, CA 95661
                                        Tel:  (916) 367-0630
                                        Fax: (916) 265-9000
                                        Attorneys for Appellant/Plaintiff
                                        Jack E. Whatley

i

# TABLE OF CONTENTS

I. STATEMENT OF JURISDICTION ........................................................ 1

II. STATEMENT OF THE CASE........................................................... 1

III. STATEMENT OF FACTS ............................................................. 2

IV. ISSUE PRESENTED...................................................................... 8

V. RELIEF SOUGHT .......................................................................... 9

VI. MEMORANDUM........................................................................... 9

   A.    STANDARD FOR RULING ON MOTION TO DISMISS .......... 9

   B.    APPELLANT ALLEGED SUFFICIENT FACTS IN SUPPORT
OF THE DECEIT CAUSE OF ACTION ............................................. 11

   C.    APPELLANT ALLEGED SUFFICIENT FACTS IN SUPPORT
OF THE PROMISSORY ESTOPPEL CAUSE OF ACTION............ 20

   D.    APPELLANT SUFFICIENTLY ALLEGED FACTS IN
SUPPORT OF A CLAIM FOR WRONGFUL FORECLOSURE ..... 27

   E.    APPELLANT SUFFICIENTLY ALLEGED FACTS IN
SUPPORT OF A CLAIM FOR VIOLATION OF  BUSINESS &
PROFESSIONS CODE SECTION 17200, ET SEQ. ........................... 30

VII. CONCLUSION................................................................................ 32

# TABLE OF AUTHORITIES

**Cases**

Aceves v. U.S. Bank, 192 Cal.App.4[th] 218, 225 (2011).......................... 20, 25

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)................................................ 10

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).............................. 9

Boon Rawd Trading Intern. Co., Ltd. v. Paleewong Trading Co., Ltd., 688 F.
Supp. 2d 940, 953 (N.D. Cal. 2010)……………………………………….20

Bushell v. JPMorgan Chase Bank, N. A. (October, 2013) 3rd DCA, Case No.
C070643 ..................................................................................... 18, 19, 25

Cahill v. Liberty Mut. Ins. Co. , 80 F.3d 336, 337-338 ............................... 9

Cel-Tech Comm. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal. 4th
163, 180 .................................................................................... 31, 32

Conley v. Gibson , 355 U.S. 41, 47 (1957)................................................... 9

Errico v. Pacific Capital Bank, N.A., 753 F. Supp.2d. 1034, 1048 (N.D. Cal.
2010)................................................................................................. 21

Gilead Sciences Sec. Litiq., 536 F.3d 1049, 1055 (9th Cir. 2008) .............. 10

Glaski v. Bank of America N. A. (2013 - CA 5th DCA) WL 037310 .......... 29

Laks v. Coast Fed. Sav. & Loan Assn. (1976) 60 Cal.App.3d 885, 890)... 26

Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) ................................. 11

Lona v. Citibank, NA 202 Cal.App.4th 89, 104 (2011)........................ 27, 28

Noyes, 9 Cal. App. 516 at 520 ................................................................. 30

People ex rel. Lockyer v. Freemont Life Insurance Co., 104 Cal.App.4th
508, 515 (2002) ....................................................................... 30, 32

People ex rel. Mosk v. National Research Co. of Cal. (1962) 201 Cal. App.
2d 765, 772 ................................................................................ 31

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ........................................... 10

Twombly, 550 U.S. at 555) ....................................................................... 10

Vess  v. Ciba-Geigy Corp. USA, 317 F. 3d 1097, 1106 (9th Cir. 2003) ..... 11

West v. JBMorgan Chase Bank, N. A. (2013) 214 Cal.App.5th 780 ....... 18, 26

**Statutes**

CA Civ. Code §1511(3) ............................................................................. 30

Civ. Code, § 1572 .................................................................................... 19

**Other Authorities**

Contracts § 293 ....................................................................................... 19

Federal Rule of Civil Procedure Rule 12 (b) (6) ......................................... 9

# I.

## STATEMENT OF JURISDICTION

This appeal is from a Judgment, arising from an order granting Respondents' motion to dismiss Appellant's First Amended Complaint without leave to amend.  Respondents BANK OF AMERICA, N.A. ("BofA"); BAC HOME LOANS SERVICING, LP ("BAC"); U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF HARBORVIEW 2005-2 TRUST FUND; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'s Memorandum and Order was signed on November 26, 2012 by Judge Morrison C. England. (ER 13-28).

# II.

## STATEMENT OF THE CASE

On August 1, 2012,  Appellant filed a First Amended Complaint (herein after referred to as "FAC") in the United States District Court, Eastern District of California against Respondents BANK OF AMERICA, N.A. ("BofA"); BAC HOME LOANS SERVICING, LP ("BAC"); U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF HARBORVIEW 2005-2 TRUST FUND; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and DOES 1 through 50, inclusively. (ER 84-150).

The FAC contained claims against Respondents for 1) Deceit,

2) Promissory Estoppel, 3) Wrongful Foreclosure in Violation of Civil Code §2924, and 4) Wrongful Foreclosure in Violation of Civil Code § 2923.5. (ER 84-150).

On August 20, 2012, Respondents filed a Notice of Motion and Motion of Defendants To Dismiss First Amended Complaint. (ER 56-83).

On September 5, 2012, Appellant filed the Opposition To Defendants' Motion To Dismiss First Amended Complaint. (ER 42-55).

On September 13, 2012, Respondents filed the Reply Brief In Support Of The Motion To Dismiss First Amended Complaint. (ER 29-41).

On November 26, 2012, the District Court filed the Memorandum and Order, granting Respondents' Motion To Dismiss. (ER 13-28).

On November 26, 2012, the District Court entered Judgment in favor of Respondents. (ER 12).

## III.

### STATEMENT OF FACTS

In or about January of 2009, Plaintiff contacted BofA , using the "800" number on his mortgage statement, to inquire about a loan modification. (ER 88: 4-5). He was informed at the beginning of the call that the call would be recorded.  (ER 88: 5-6). The BofA representative with whom Plaintiff spoke told Plaintiff that "he was

not far enough behind [on his mortgage payments] to qualify for a loan modification." (ER 88: 6-8). The representative told Plaintiff that once he was far enough behind on his payments, he would qualify for a loan modification. (ER 88: 8-9). Plaintiff would receive the loan modification because "we've [BofA and BAC] got TARP [Troubled Assets Relief Program] money from the Federal government." (ER 88: 9-11). Plaintiff was told to call back after he was further behind on his mortgage payments. (ER 88: 11-12).

From January of 2009 to approximately August 2009, Plaintiff contacted BofA/BAC approximately once every three months by telephone and was told that he was not delinquent enough to qualify for a loan modification. (ER 88: 13-15). He was told on each occasion that he would need to stop making mortgage payments if he wanted to obtain a modification. (ER 88: 15-16).

Plaintiff was informed at the commencement of every call he placed to BofA/BAC at all times relevant herein that the telephone call was being recorded. (ER 88: 17-18).

In reliance on BofA's representations that he would obtain a loan modification, Plaintiff stopped making his mortgage payments, altogether. (ER 88: 19-20).

In reliance on BofA's representations, Plaintiff continued to telephone BofA over the next nine months and was repeatedly told that he was "not far enough behind" on his mortgage payments to qualify for a loan modification and that he should keep calling back to

3

see if it was time for him to apply for a loan modification. (ER 88: 21-24).

On or about September 27, 2010, BofA sent Plaintiff a letter stating that he was preapproved for a Home Affordable Modification Program (herein referred to as "HAMP") modification. (ER 88: 25-27). BofA sent Plaintiff an application and list of information that he was to submit. Plaintiff timely sent BofA all requested documentation and information. (ER 88: 27-28).

After submitting all of the requested documents, Plaintiff contacted BofA to determine the status of his application. (ER 89: 1-2). On October 27, 2010, Plaintiff was told that BofA did not have his application and that he would need to reapply for a HAMP modification. (ER 89: 2-3).

In November of 2010, BofA sent Plaintiff another HAMP modification package. (ER 89: 4). Plaintiff again submitted all requested documents and information in a timely manner. (ER 89: 5). Plaintiff contacted BofA and confirmed that the application had been received; BofA told Plaintiff that his application was being processed and that he would be contacted if there were any developments in his application. (ER 89: 5-8).

In January of 2011 Plaintiff received a copy of the NOD. (ER 89: 9). Plaintiff contacted BofA to learn the status of his HAMP application. (ER 89: 9-10). BofA told Plaintiff that the modification was "being process" and that the NOD was part of the modification

4

process. (ER 89: 10-11). BofA again assured Plaintiff that he would be contacted with any developments. (ER 89: 11-12).

On or about March 5, 2011, BofA sent Plaintiff a new modification package and informed him that he would need to reapply for a modification. (ER 89: 13-14). Plaintiff again sent all requested documents and information to Defendants BAC and BofA within the time required. (ER 89: 14-15).

On or about March 18, 2011, BofA and BAC sent Plaintiff a fourth modification package; again, Plaintiff complied by reapplying and sending all requested documentation to Defendants BAC and BofA within the time required. (ER 89: 16-18). Plaintiff contacted BofA and was informed that the documents were received, the application was being processed, and that he would be contacted if anything else were needed. (ER 89: 18-20).

Despite having acknowledged that BofA received all of Plaintiff's documents, Plaintiff received a letter from BofA on or about May 7, 2011, stating that it needed additional documents. (ER 89: 21-23). Plaintiff again submitted the requested documentation within Defendants' deadline. (ER 89: 23).

On or about June 10, 2011, BofA sent Plaintiff a letter stating that Plaintiff had failed to provide all documents that had been requested and, therefore, he was being denied a HAMP modification. (ER 89: 24-26). That statement was false; Plaintiff submitted each and every document ever requested of him, and had done so repeatedly.

(ER 89: 26-27).

Plaintiff requested an appeal of the modification denial. (ER 89: 28).

On or about June 22, 2011, Plaintiff received another letter from BofA stating that Plaintiff was being denied for the modification because BofA had been unable to contact Plaintiff. (ER 90: 1-2). Plaintiff had provided BofA with his telephone number many times. (ER 90: 3). He received no messages on his automated voicemail to indicate that BofA was trying to contact him. (ER 90: 3-4). Plaintiff is informed and believes and thereon alleges that BofA made no efforts, whatsoever, to contact him. (ER 90: 4-6).

On or about July 11, 2011, Plaintiff received a letter from BofA confirming receipt of his appeal. (ER 90: 7-8).

On or about July 19, 2011, Plaintiff received a letter from BofA stating that Plaintiff's appeal had been forwarded to "a specialist in the appropriate department for further research." (ER 90: 9-11).

On or about August 3, 2011, Plaintiff received a letter stating that he was "not eligible for a loan modification through [his] original application," but informed him that he could submit a new application. (ER 90: 12-14). Plaintiff again submitted all requested documentation in a timely fashion by facsimile and Federal Express. (ER 90: 14-15). The August 3, 2011, letter did not indicate which of his many modification applications constituted his "original application." (ER 90: 15-16).

6

On or about August 12, 2011, Plaintiff received a call from BofA requesting signed tax returns, a profit & loss statement, and a letter stating that no homeowner association dues were owed. (ER 90: 17-19). Plaintiff sent these documents to BofA by Federal Express and by facsimile on August 12, 2011. (ER 90: 19-20).

Five days later, on or about August 17, 2011, Plaintiff received a call from BofA requesting the very documents that had been sent on August 12, 2011. (ER 90: 21-22). Plaintiff again faxed these documents to BofA that very day. (ER 90: 22-23).

On or about August 23, 2011, Plaintiff received a letter from BofA stating that additional documents were needed to review his application. (ER 90: 24-25). Plaintiff again immediately submitted all additional documents to Defendants. (ER 90: 25-26).

On or about August 24, 2011, Mr. Whatley received a letter from BofA, thanking him for sending in his financial documents and stating that BofA was reviewing them. (ER 90: 27-28).

On or about September 8, 2011, Plaintiff received a letter from BofA denying him a HAMP modification because of the amount of his outstanding principal balance. (ER 91: 1-2).

Plaintiff contacted BofA to inquire why BAC and BofA had delayed the modification process for more than a year. (ER 91: 3-4). Plaintiff was told by a BofA representative that he was now in review for a different modification program and that he would be contacted regarding the new modification. (ER 91: 4-6).

On or about September 9, 2011, Plaintiff received a letter from BofA requesting that he submit additional documents so that the Subject Loan could be considered for a trial modification. (ER 91: 7-9).

On or about September 15, 2011, Plaintiff contacted BofA to inquire about the new loan modification review. (ER 91: 10-11). Plaintiff spoke with Zanika Payne, who informed him that he had 72 hours to submit the financial documents and a hardship letter. (ER 91: 11-12). Plaintiff timely submitted these documents again. (ER 91: 12-13).

On or about October 11, 2011, Plaintiff contacted BofA to learn the status of his modification. (ER 91: 14-15). Plaintiff was told that his application had been closed and that the Subject Property was going to be sold at a trustee's sale on October 21, 2011. (ER 91: 15-16).

## IV.

### ISSUE PRESENTED

The issues presented on appeal are 1) whether Appellant alleged sufficient facts in support of the causes of action in the First Amended Complaint to withstand Respondents' motion to dismiss, or 2) whether, alternatively, Appellant should have been granted leave to amend.

## V.

### RELIEF SOUGHT

Appellant seeks an order vacating the Judgment, reversing the Trial Court's Order of Dismissal and a remanding the case to the United States District Court.

## VI.

### MEMORANDUM

### A.   STANDARD FOR RULING ON MOTION TO DISMISS

On a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12 (b) (6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co. , 80 F.3d 336, 337-338 (9th Cir. 1996). Rule (8) (2) requires 'only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson , 355 U.S. 41, 47 (1957) ).  A complaint attacked by a Rule (b) (12) motion to dismiss does not require detailed factual allegations. Id.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." Id. (internal

9

citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The Court also is not required "to accept as true allegations that are merely conclusions , unwarranted deductions of fact, or unreasonable inferences." In re Gilead Sciences Sec. Litiq., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citations and quotations omitted). "Factual speculation must be enough to raise a right to relief above speculation level." Twombly, 550 U.S. at 555.

Furthermore, "Rule (a) (2) … requires a 'showing,' rather than a blanket assertion of entitlement of relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also the 'grounds' on which it rests." Id. (citation omitted). A pleading must contain "only enough facts to state a claim for relief that is plausible on its face." Id. At 570. If the "plaintiffs…have not nudged their claim across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ).

### B.  APPELLANT ALLEGED SUFFICIENT FACTS IN SUPPORT OF THE DECEIT CAUSE OF ACTION

For the deceit cause of action, the District Court acknowledged its elements, as described in California case law: " 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and resulting damage.' Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996)." (ER 19: 9-14). However, the District Court goes on to recognize that under Federal Rule 9(b), for this cause of action, a plaintiff is required to plead "the 'who, what, when, when, where and how' of the misconduct charged." (ER 19: 19-22, quoting Vess v. Ciba-Geigy Corp. USA, 317 F. 3d 1097, 1106 (9th Cir. 2003).)

With respect to Appellant's FAC, the District Court stated:

...Plaintiff's FAC is devoid of any details regarding essential provisions of Defendants' alleged promises, such as  the delinquency requirements and the terms of the promised modification...Additionally, Plaintiff again fails to demonstrate that the statement itself was false. Finally, Plaintiff is unable to "identify how [Defendants'] representation is fraudulent." (internal citations omitted) (ER 20: 10 – 21: 3).

With respect to demonstrating that Respondents' statements were, in fact,  false, this is not the standard for review of a motion to dismiss. Instead, proving falsity is reserved for decision by the trier of

11

fact.

Next, Appellant contends that all of the requirements for pleading this cause of action were met in the FAC. More precisely, Appellant alleged specific facts that meet both the elements of the State claim and the heightened requirement under Federal Rule 9 (b), as demonstrated by the FAC:

> **Misrepresentation:** *Plaintiff was informed by a representative of Defendant that he would be approved for a loan modification only if he became sufficiently delinquent on his monthly mortgage payments.*
>
> *Who made the representation:*
> *1. Name: Unknown Representative*
> *2. Employer: BofA*
> *3. Title, capacity, or role of the person: employee of BofA*
> *Authority to speak: Employee of BofA representing she could act on behalf of BofA and from the actions of BofA in taking* [and] *responding to Plaintiff's call on a*[n] *"800" service phone number.*
>
> *How or by what means was the representation made: By phone*
> *When was the representation made: On or about January 2009*
> *Where was the representation made: In Sacramento*
> *To whom was the representation made: To Plaintiff*
> **What was false or misleading about the representation?:** *Although Plaintiff complied with Defendants' demands and withheld his monthly mortgage payments, he was not given a loan modification as promised. In fact, due to his missed payments, Plaintiff was informed he did not qualify for a loan modification under HAMP.*
> **The materiality of the false representation:** *Instead of assisting Plaintiff, Defendants misled him with the intent of frustrating and obstructing his ability of obtaining a loan modification or retain*[ing] *his home through bankruptcy protection. Plaintiff would not have withheld monthly mortgage payments but for*

Defendants' promise of a loan modification after Plaintiff became more seriously delinquent in these payments. Had he been unable to cure his delinquencies, he would have either filed for Chapter 13 bankruptcy protection or sold the Subject Property; he would not have risked foreclosure.

**Damages:** Plaintiff has expended countless hours making copies of documents, traveling to Fed Ex or other overnight delivery companies, telephoning BofA/BAC and other related entities to try to complete the promised loan modification. He has incurred mailing costs, photocopying costs and other costs associated with producing the vast volume of documents demanded by Defendants, over and over. His credit rating has plunged because he became seriously delinquent on his mortgage at the insistence of BofA and BAC personnel. He incurred late fees and other penalties on the mortgage that he would not otherwise have incurred.

Plaintiff has also been forced to retain legal counsel to help him save his home by filing this lawsuit, and has paid attorneys' fees and costs associated with this lawsuit, and other damages, all in an amount within the jurisdiction of this Court.

**Misrepresentation:** Plaintiff was informed by a representative of Defendant that he was conditionally approved for a HAMP modification with a principal reduction.

Who made the representation:

4.  Name: Unknown Representative to Plaintiff, but within the access of Defendants;

5.  Employer: BofA

6.  Title, capacity, or role of the person: employee of BofA in its "Home Retention Division"

7.  Authority to speak: Employee of BofA (which includes BAC) representing that he or she could act on behalf of BofA, which was confirmed by the actions of BofA, which accepted the modification information and advised its employees to state that the modifications were in the "review process";

8.  How or by what means was the representation made: In

13

writing and orally, on the telephone;

When was the representation made: On or about September 27, 2010 and on other dates, as set forth above;

Where was the representation made: By letter and on the telephone in Sacramento, California

To whom was the representation made: To Plaintiff

**What was false or misleading about the representation?:** Although Defendants represented to Plaintiff that he had qualified for a HAMP modification, Defendants ultimately closed his file, rejecting his application, and issued an NOD, without further explanation to Plaintiff.

**The materiality of the false representation:** Had Plaintiff not been told that he needed to be seriously delinquent in order to obtain a HAMP modification, Plaintiff would not have stopped making his monthly mortgage payments and would have pursued other means of saving his home, as set forth above.

**Damages:** Plaintiff has expended countless hours making copies of documents, traveling to Fed Ex or other overnight delivery companies, telephoning BofA/BAC and other related entities to try to complete the promised loan modification. He has incurred mailing costs, photocopying costs and other costs associated with producing the vast volume of documents demanded by Defendants, over and over. His credit rating has plunged because he became seriously delinquent on his mortgage at the insistence of BofA and BAC personnel. He incurred late fees and other penalties on the mortgage that he would not otherwise have incurred.

Plaintiff has also been forced to retain legal counsel to help him save his home by filing this lawsuit, and has paid attorneys' fees and costs associated with this lawsuit, and other damages, all in an amount within the jurisdiction of this Court.

**Misrepresentation:** Plaintiff was informed by a representative of Defendant that he was eligible for a HAMP modification.

1. Name: Unknown Representative to Plaintiff, but within the access of Defendants;

14

2. *Employer: BofA*

3. *Title, capacity, or role of the person: employee of BofA in its "Home Retention Division"*

*ii. Authority to speak: Employee of BofA (which includes BAC) representing that he or she could act on behalf of BofA, which was confirmed by the actions of BofA, which accepted the modification information and advised its employees to state that the modifications were in the "review process";*

*iii. How or by what means was the representation made: In writing and orally, on the telephone*

*iv. When was the representation made: On or about November 26, 2010 and on other dates, as set forth above;*

*v. Where was the representation made: By letter and on the telephone in Sacramento, California*

*vi. To whom was the representation made: To Plaintiff*

**What was false or misleading about the representation?:** *Although Defendants represented to Plaintiff that he had qualified for a HAMP modification, Defendants ultimately closed his file, rejecting his application, and issued an NOD, without further explanation to Plaintiff.*

**The materiality of the false representation:** *Had Plaintiff not been told that he needed to be seriously delinquent in order to obtain a HAMP modification, Plaintiff would not have become so delinquent on his mortgage payments. Further, Plaintiff would have placed his house on the market for sale and filed for Chapter 13 bankruptcy protection at a time when he would have been able to save his home through an affordable Chapter 13 payment plan.*

**Damages:** *Plaintiff has expended countless hours making copies of documents, traveling to Fed Ex or other overnight delivery companies, telephoning BofA/BAC and other related entities to try to complete the promised loan modification. He has incurred mailing costs, photocopying costs and other costs associated with producing the vast volume of documents demanded by Defendants, over and over. His credit rating has plunged because he became*

15

seriously delinquent on his mortgage at the insistence of BofA and BAC personnel. He incurred late fees and other penalties on the mortgage that he would not otherwise have incurred.

**Misrepresentation:** *Plaintiff was informed that his application for a loan modification through HAMP was still in review and that he would be not be foreclosed upon during the review period.*

*Who made the representation:*

    1.    *Name: Myrian Pierre Phillipe*

    2.    *Employer: BofA*

    3.    *Title, capacity, or role of the person: employee of BofA*

*Authority to speak: Employee of BofA representing she could act on behalf of BofA and from the actions of BofA in taking information on the loan.*

*How or by what means was the representation made: In writing*

*When was the representation made: On or about August 18, 2011.*

*Where was the representation made:    By phone.*

*To whom was the representation made: To Plaintiff*

**What was false or misleading about the representation?:** *Although Plaintiff was told that his application was being reviewed, on or about October 11, 2011, Defendants initiated foreclosure procedures during a time in which Plaintiff's application was under review.*

**The materiality of the false representation:** *Had Plaintiff not been told that he needed to be seriously delinquent in order to obtain a HAMP modification, Plaintiff would not have stopped making his monthly mortgage payments.*

**Damages:** *Plaintiff has expended countless hours making copies of documents, traveling to Fed Ex or other overnight delivery companies, telephoning BofA/BAC and other related entities to try to complete the promised loan modification. He has incurred mailing costs, photocopying costs and other*

16

costs associated with producing the vast volume of documents demanded by Defendants, over and over. His credit rating has plunged because he became seriously delinquent on his mortgage at the insistence of BofA and BAC personnel. He incurred late fees and other penalties on the mortgage that he would not otherwise have incurred.

**Misrepresentation:** *Plaintiff was informed by Defendant that he had failed to provide all documents that had been requested and was being denied a HAMP modification as a consequence.*

Who made the representation:

1.  Name: Unknown Representative to Plaintiff, but within the access of Defendants;
2.  Employer: BofA
3.  Title, capacity, or role of the person: employee of BofA

Authority to speak: Employee of BofA representing she could act on behalf of BofA and from the actions of BofA in taking information on the    loan.

How or by what means was the representation made: In writing

When was the representation made: On or about June 10, 2011

Where was the representation made: By letter in Sacramento

To whom was the representation made: To Plaintiff

**What was false or misleading about the representation?:** On or about October 11, 2011, BofA sent Plaintiff a letter which stated that Plaintiff had failed to provide all documents that had been requested and, therefore, he was being denied a HAMP modification. Plaintiff had provided all documents demanded by B of A.

**The materiality of the false representation:** Had Plaintiff not been told that he needed to be seriously delinquent in order to obtain a HAMP modification, Plaintiff would not have become so deeply delinquent on his mortgage payments and would have pursued other avenues to save his house, as set

17

*forth above.*

**Damages:** *Plaintiff has expended countless hours making copies of documents, traveling to Fed Ex or other overnight delivery companies, telephoning BofA/BAC and other related entities to try to complete the promised loan modification. He has incurred mailing costs, photocopying costs and other costs associated with producing the vast volume of documents demanded by Defendants, over and over. His credit rating has plunged because he became seriously delinquent on his mortgage at the insistence of BofA and BAC personnel. He incurred late fees and other penalties on the mortgage that he would not otherwise have incurred.*

*When Plaintiff was told he was not qualified for a HAMP modification, he was told that he was being considered in good faith for another loan modification and should be able to get that modification.*

*In reliance on Defendants' representations, Plaintiff refrained from filing for Chapter 13 bankruptcy protection at a time when he would have been able to save his home through an affordable Chapter 13 payment plan. Further, Plaintiff also surrendered his options to other remedies, such as a short sale of his house.* (ER 93: 15 – 99: 19.)

The heightened pleading requirement of identifying the persons making the false representations is far less stringent when the identity of the perpetrator(s) is uniquely within the knowledge of the party charged with the wrongdoing. *Bushell v. JPMorgan Chase Bank, N. A.* (October, 2013) 3rd DCA, Case No. C070643, ceritified for publication on October 22, 2013, citing *West v. JBMorgan Chase Bank, N. A.* (2013) 214 Cal.App.5[th] 780. Appellant alleged in the FAC the dates of the misrepresentations, that each person making such misrepresentation(s)

was an employee of the Respondent, that the telephone conversations were recorded and that a log of such communications is maintained by Respondent.  Appellant has met the specificity requirement, as further identification of the individual can easily be ascertained by Respondent from the facts given, since Respondent is the identification of those persons is "uniquely with Respondent's knowledge." (*Bushell, ibid.*)

The Court need look no further than the October 22, 2013 published decision of the California Court of Appeal, Third Appellate District, in Bushell v. JP Morgan Chase, C070643 __WL___ where the Court reversed dismissal of the Fraud cause of action p.18

> In their first amended complaint, plaintffs allege as pertinent, (1) Chase made affirmative misrepresentations of material fact and/or false promises to plaintiffs, including that plaintiffs would be offered a permanent modification under certain conditions; (2) the TPP states, " 'As long as [plaintiffs] comply with the terms of the [TPP], [Chase] will not start … foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started'" (emphasis added in first amended complaint); (3) Plaintiffs complied with the terms of the TPP and have made 26 of those payments; (4) despite this, Chase issued a notice of trustee's sale to foreclosure; and (5) Chase deceived plaintiffs for its own financial gain.
>
> These allegations are sufficient to state a fraud cause of action for false promise. Under California statutory law, "[a] promise made without any intention of performing it" is actual fraud. (Civ. Code, § 1572, subd. 4; see Witkin, Summary of Cal. Law (10[th] ed. 2005) Contracts § 293, p. 320.)

As demonstrated here, for the purpose of pleading a complaint, Appellant sufficiently alleged facts in support of each required element

for this cause of action. Appellant also alleged facts to meet the heightened pleading requirement under Rule 9 (b). Thus, in granting Respondents' Motion to Dismiss, the District Court erred.

### C.  APPELLANT ALLEGED SUFFICIENT FACTS IN SUPPORT OF THE PROMISSORY ESTOPPEL CAUSE OF ACTION

Under California Law, a properly alleged claim for promissory estoppels requires " (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise was made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppels must be injured by his or her reliance." Boon Rawd Trading Intern. Co., Ltd. v. Paleewong Trading Co., Ltd., 688 F. Supp. 2d  940, 953 (N.D. Cal. 2010) (citation omitted). "To be enforceable, a promise need only be definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." Aceves v. U.S. Bank, 192 Cal.App.4th 218, 225 (2011).  Furthermore, "[p]romissory estoppels applies whenever a 'promise which the promissor should reasonably expect to induce action or forbearance on the part of the promissee or a third party and which does induce such action or forbearance 'would result in an 'injustice' if the promise were not enforced…" Id, at 227 (internal citations omitted).

The District Court's chief argument with respect to this cause of action is that Appellant failed to allege an enforceable promise by Respondents:

20

…Plaintiff offers no details regarding the extent of the "promised" loan modification or exactly how delinquent he would need to be in order to receive the loan modification. Consequently, Plaintiff's vague statements in the FAC fail to provide any insight into the scope and conditions of Defendants' alleged promises. (ER 22: 12-17.)

However, describing each and every detail is not a requirement for this cause of action. See Errico v. Pacific Capital Bank, N.A., 753 F. Supp.2d. 1034, 1048 (N.D. Cal. 2010), holding that promissory estoppel applies where the promise is silent as to some terms of an agreement. For purposes of pleading the cause of action, Appellant alleged facts in the FAC that were adequately specific:

> As set forth above, Defendants, throughout their representatives, promised Plaintiff a loan modification if he became seriously delinquent and if he provided confidential financial information.
> On or around January of 2009, Defendant BofA, through a representative whose identity Defendant can ascertain from its communications logs, told Plaintiff that he did not qualify for a loan modification because he was not far enough behind on his monthly mortgage payments. He was told by that representative that he needed to stop making his mortgage payments, altogether in order to qualify.
> From January of 2009 to about August of 2009, Plaintiff contacted Defendant approximately once every three months and was told each time that he was still not sufficiently delinquent to qualify for a loan modification. Again, Plaintiff was instructed by Defendants to stop making his monthly mortgage payments, altogether.
> On or about September 27, 2010, BofA sent Plaintiff a letter stating that he was preapproved for the Home Affordable Modification Program ("HAMP") modification. BofA sent

21

*Plaintiff an application and list of information and documentation that he was required to submit. Plaintiff timely sent BofA all requested documentations and information.*

*On or about October 27, 2010, Plaintiff was told by B of A that B of A did not have his application and that he would need to reapply for a HAMP modification.*

*In November of 2010, BofA sent Plaintiff another HAMP modification package. Plaintiff again submitted all requested documents and information in a timely manner. Plaintiff contacted BofA and confirmed that the application had been received; BofA told Plaintiff that his application was being processed and that he would be contacted if there were any developments in his application.*

*In January of 2011 Plaintiff received a copy of an NOD. Plaintiff contacted BofA to learn the status of his HAMP modification and to ask why the bank recorded an NOD. BofA told Plaintiff that the modification was "being processed" and that while the NOD was part of the modification process, the trustee's sale would not be conducted so long as the modification was in review. BofA again assured Plaintiff that he would be contacted with any developments. B of A never contacted Plaintiff to keep him informed.*

*On or about March 5, 2011, BofA sent Plaintiff a new loan modification package and informed him that he would need to reapply for a modification. Plaintiff again sent all requested documents and information to Defendants BAC and BofA within the time required.*

*On or about March 18, 2011, BofA and BAC sent a fourth loan modification package to Plaintiff; again, Plaintiff complied by reapplying and sending all requested documentation to Defendants BAC and BofA within the time required. Plaintiff contacted BofA and was informed that the documents were received, the application was being processed, and that he would be contacted if anything else*

22

*were needed.*

*Despite having acknowledged that BofA had received all of Plaintiff's documents, Plaintiff received a letter from BofA on or about May 7, 2011, stating that it needed additional documents. Plaintiff again submitted the requested documentation within Defendants' deadline.*

*On or about June 10, 2011, BofA sent Plaintiff a letter stating that Plaintiff had failed to provide all documents that had been requested and, therefore, he was being denied a HAMP modification. This statement was false, as Plaintiff had provide every single item requested, and well before the state deadline.*

*Plaintiff requested an appeal of the denial.*

*On or about June 22, 2011, Plaintiff received another letter from BofA stating that Plaintiff was being denied a modification because BofA had been unable to contact Plaintiff. As set forth above, Plaintiff is informed and believes and thereon alleges that B of A made no attempts to contact Plaintiff, since Plaintiff did not receive a single telephone voicemail message from B of A or BAC, nor did her receive written communications by mail, email or otherwise.*

*On or about July 11, 2011, received a letter from BofA confirming receipt of his appeal.*

*On or about July 19, 2011, Plaintiff received a letter from BofA stating that Plaintiff's appeal had been forwarded to "a specialist in the appropriate department for further research."*

*On August 3, 2011, Plaintiff received a letter from BofA stating he is "not eligible for a loan modification through [his] original application," but informed him that he could submit a new application. Plaintiff again submitted all requested documentation in a timely fashion by facsimile and Federal Express.*

*On or about August 12, 2011, Plaintiff received a call from BofA, requesting signed tax returns, a profit & loss statement, and a letter stating that no homeowner association dues were*

owed. Plaintiff sent these documents to BofA by Federal Express and by facsimile on August 12, 2011.

Five days later, on or about August 17, 2011, Plaintiff received a call requesting the very documents that had been sent on August 12, 2011. Plaintiff again faxed these documents to BofA that very day.

On or about August 23, 2011, Plaintiff received a letter from BofA stating that additional documents were needed to review his application. Plaintiff again immediately submitted all additional documents to Defendant.

On or about August 24, 2011, Mr. Whatley received a letter from BofA, thanking him for sending in his financial documents and stating that BofA was reviewing them.

On or about September 8, 2011, Plaintiff received a letter from BofA denying him a HAMP modification because of the outstanding principal balance.

Plaintiff contacted BofA to inquire why BAC and BofA had delayed the modification process for more than a year. Plaintiff was told by a BofA representative that he was now in review for a different modification program and that he would be contacted regarding the new modification.

On or about September 9, 2011, Plaintiff received a letter from BofA requesting that he submit additional documents so that the Subject Loan could be considered for a trial modification.

On or about September 15, 2011, Plaintiff contacted BofA to inquire about the new loan modification review. Plaintiff spoke with Zanika Payne, who informed him that he had 72 hours to submit financial documents and a hardship letter. Plaintiff timely submitted these documents again.

On or about October 11, 2011, Plaintiff contacted BofA to learn the status of his modification. Plaintiff was told that his application had been closed and that the Subject Property was going to be sold at a trustee's sale on October 21, 2011.

Plaintiff complied with all terms set forth in the HAMP program application and provided all requested

24

> *documentation, not just once, but over and over and over.*
> *On or about September 8, 2011, Plaintiff was notified by*
> *Defendant, through an unknown representative, that "as a*
> *result of delay," the outstanding principle balance of Subject*
> *Loan increased, disqualifying him for HAMP. The delay was*
> *due to B of A's inaction, not due to anything over which*
> *Plaintiff had control.*
> *Defendants' actions caused Plaintiff severe emotional distress.*
> *Because Plaintiff relied on BofA's and BAC's representations*
> *that he would receive a HAMP modification, Plaintiff refrained*
> *from taking other actions that he would otherwise have taken to*
> *save his home from foreclosure but for Defendants' promises*
> *and representations.*
> *As a consequence of Defendants' unfulfilled promises,*
> *Plaintiff has suffered actual injury, including the lost*
> *opportunity to obtain the protection of the Bankruptcy Court*
> *through an affordable Chapter 13 plan, because he was*
> *induced to delay filing for Bankruptcy protection by of*
> *Defendants' false promises. In addition, Plaintiff has suffered*
> *additional injury and damages as set forth above.* (ER 99:27 –
> 103:17.)

It should further be recalled that in January of 2009, Appellant
was told that he would get a loan modification if he became seriously
delinquent because Respondents would grant him a modification
since they received money from the federal government through the
TARP program specifically for that purpose. (ER 88: 4-12). This
promise is more less ambiguous than the promise at issue in <u>Aceves</u>.

The Court need look no further than the October 22, 2013
published decision of the California Court of Appeal, Third Appellate
District in Bushell v. JP Morgan Chase, C070643 __WL__ where the

Court reversed dismissal of the promissory Estoppel cause of action

p. 17 holding:

> The elements of promissory estoppel are (1) a clear and unambiguous promise by the promisor, and (2) reasonable, foreseeable and detrimental reliance by the promise. (*Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 890)

> The only disputed elements here are whether plaintiffs alleged a clear and unambiguous promise, and detrimental reliance.

> The allegation of the TPP contract-through which a permanent modification was to be offered if certain conditions were met-meets the element of a clear and unambiguous promise.

> As for detrimental reliance, Chase again argues that plaintiffs did not incur damages because they were already obligated to make their monthly mortgage payments.

> Similar to the damages they allege resulted from the contractual breach, however, plaintiffs allege they detrimentally relied on Chase's promise to permanently modify their loan by repeatedly contacting Chase, by repeatedly preparing documents at Chase's request, by discontinuing efforts to pursue a refinance from other financial institutions or to pursue other means of avoiding foreclosure, and by losing their home and making it unlikely they could purchase another one. Consequently, plaintiffs have adequately alleged detrimental reliance to sustain a promissory estoppel cause of action. (See *West, Supra*, 214 Cal.App.4th at p.795)

Accordingly, Appellant properly stated a claim for promissory estoppel, as he met the requirement, under California law, for a clear

and unambiguous promise made by Respondents. The District Court erred in deciding otherwise.

### D. APPELLANT SUFFICIENTLY ALLEGED FACTS IN SUPPORT OF A CLAIM FOR WRONGFUL FORECLOSURE

The District Court stated that Appellant's Wrongful Foreclosure claim fails for want of adequate tender:

> …Plaintiff's tender offer was conditioned on a variety of speculative findings and thus was insufficient to survive Defendants' motion to dismiss…Here, Plaintiff again makes his tender offer conditional on the Court's finding as to who Plaintiff believes is owed his payments and what damages Plaintiff believes he has sustained to offset amount owed. Because Plaintiff has failed to make an unconditional tender offer, his wrongful foreclosure claim fails. (ER 24: 12-20).

The issue of tender and its exceptions under California law are addressed squarely in <u>Lona v. Citibank, NA</u> 202 Cal.App.4th 89, 104 (2011), where the California Court of Appeal recognized that a trustee's sale may be set aside based on a suit in equity. A plaintiff is not required to allege tender in circumstances such as the case at hand, where tender is excused due to conduct by a creditor intended to induce debtor's nonperformance of an obligation.

California Civil Code Section 1511 provides as follows:

> The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate:

27

1. When such performance or offer is prevented or delayed by
   the act of the creditor, or by the operation of law, even
   though there may have been a stipulation that this shall not
   be an excuse;
2. …
3. When debtor is induced not to make it, by any act of the
   creditor intended or naturally tending to have that effect,
   done at or before time at which such performance or offer
   may be made, and not rescinded before that time.

Additional exceptions to the tender requirement are set forth in
Lona, 202 Cal.App.4th at 113.  Tender is not required when the
plaintiff has a claim of set-off or where equity does not require it. Id.
Although Appellant is not required to do so, Appellant has tendered
payment of the amount due, subject to set-off, as alleged in the FAC:

> *Plaintiff unconditionally offers to tender to the extent required by
> law any amount due and owing after offset for damages for
> wrongful foreclosure on the Subject Property, to the true
> beneficiary under the deed of trust or holder of the note in due
> course.* (ER 105: 28 – 106: 2).

Appellant has the right of set-off, as stated in Lona, and
Appellant has the right to pay only the person or entity that is entitled to
receive the payment; neither of which is MERS or any other
Respondents named herein, since none is the beneficiary or an agent of
the beneficiary, including the alleged trustee.  The loan is part of a
securitized trust, and the note and deed of trust were transferred by
MERS years before it recorded an Assignment of Deed of Trust,
purporting to transfer the deed of trust to another entity.  Thus, MERS

had no interest to transfer, and the Assignments are void as a matter of law. *Glaski v. Bank of America N. A.* (2013 - CA 5th DCA) WL 037310. The other Respondents were appointed by MERS or claim their interests through MERS. They were not appointed by the holder of the note nor authorized by the holder of the note and deed of trust, and therefore, their attempts to exercise control over the deed of trust and the Subject Property is void. (*Ibid.*)

Yet another exception to the tender requirement is when the trustee's deed is void on its face. <u>Lona</u>, 202 Cal.App.4th at 115. This exception hits to the core of Appellant's claim. The foreclosing parties have no standing to 1) issue and/or record a Notice of Default, as they are not the beneficiary, the mortgagee, or an authorized agent of either; 2) issue and/or record a Notice of Trustee's Sale, as they are not the beneficiary, mortgagee or an authorized agent of either; or 3) conduct a Trustee's Sale and sell the Subject Property, as they are not the beneficiary, mortgagee or an authorized agent of either. The Notice of Default is void, the Notice of Trustee's Sale is void and the Trustee's Deed, issued after an illegal Trustee's Sale was conducted, is void. Appellant was not required to tender payment of any kind in this circumstance. (*Ibid.*)

In addition, Respondents induced Appellant to become delinquent on his payments with their assurances that he would qualify for a loan modification. Respondents' conduct thus delayed Appellant's repayment of the note and further induced Appellant not to make pay because of its assurances that Appellant would obtain the modification. As the court noted in <u>Noyes v. Schlegel</u>, a "defendant should not be permitted to lull the plaintiff into security

29

by telling him that he need not comply promptly with the time clause of the contract, and then take advantage of the delay occasioned by his own act to declare a forfeiture." 9 Cal. App. 516, 520 (1908). Therefore, the requirement of formal tender "is excused when the person who should have made it is induced not to do so by any act of the other party 'naturally tending to have that effect, done at or before the time at which such performance or offer may be made." <u>Noyes</u>, 9 Cal. App. 516 at 520; CA Civ. Code §1511(3).

Finally, for the purpose of pleading a wrongful foreclosure claim, Appellant is not required to prove any offset amount. Per the standard on ruling on motions to dismiss, it is sufficient that Appellant places the Respondents on notice of the fact that a set-off amount is alleged. Because discovery has not been completed, the exact amount of any set-off cannot be divined.

Consequently, the District Court erred in granting Respondents' motion to dismiss, as the law recognizes exceptions to tender, including alleged set-offs, and these exceptions are not required to be factually proven at the pleading stage.

### E.   APPELLANT SUFFICIENTLY ALLEGED FACTS IN SUPPORT OF A CLAIM FOR VIOLATION OF BUSINESS & PROFESSIONS CODE SECTION 17200, ET SEQ.

In order to state a claim under §17200, "virtually any state, federal or local law can serve as the predicate for an action under section 17200." <u>People ex rel. Lockyer v. Freemont Life Insurance Co.</u>, 104 Cal.App.4th 508, 515 (2002) (punctuation and citations omitted). Unfair competition can be established by showing a

30

violation of any state, federal, or local law.  Cel-Tech Comm. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal. 4th 163, 180.  Unfair competition is broadly construed to allow courts maximum discretion to prohibit new schemes to defraud. Id. The Supreme Court has explained that "[w]hen a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one." Cel-Tech Comm., 20 Cal 4th at 181. The essential test to determine whether the defendant's conduct is unfair is whether the public is likely to be deceived by that conduct. People ex rel. Mosk v. National Research Co. of Cal. (1962) 201 Cal. App. 2d 765, 772.

The District Court stated that Appellant failed to provide a basis for this claim:

> Plaintiff claims that Defendants breached all three of the UCL's prongs...However, Plaintiff's UCL cause of action does not provide additional details or allegations supporting the claim. As a result, Plaintiff implicitly premises his UCL claim on the FAC's other three causes of action. When a plaintiff's UCL cause of action is derivative of other claims, "[w]here those claims are deficient, Plaintiff's UCL [cause of action] must also fail."...Here, the Court has already stated various reasons for dismissing Plaintiff's other causes of action, and, consequently, Plaintiff's UCL claim fails because it suffers from the same deficiencies. (internal citations omitted). (ER 26: 15-27.)

However, as argued above, Appellant's previous three causes of action should have been allowed to withstand Respondents' motion to dismiss. As such, Appellant's UCL claim should also be allowed to

31

stand, since it is supported by a deceit cause of action and the violation of Civil Code §2924. Under California law, both of these causes of action provide bases upon which a UCL claim may be tethered. (See People ex rel. Lockyer, 104 Cal.App.4th at 515; and Cel-Tech Comm., 20 Cal 4th at 181).

## VII.

## CONCLUSION

The District Court erred in granting Respondents' Motion To Dismiss. The Judgment should be reversed and the action returned to the District Court with an order to continue litigation.


Dated:   October 25, 2013

          Respectfully submitted,

          **UNITED LAW CENTER**


By:   /s/ John S. Sargetis
          **JOHN S. SARGETIS**
          Attorney for Plaintiffs-Appellants

## STATEMENT OF RELATED CASES

Plaintiffs and Appellants are unaware of any cases that are now pending or were pending in this Court which are related to this appeal.

Dated:   October 25, 2013          Respectfully submitted,

**UNITED LAW CENTER**

By:   /s/ John S. Sargetis
**JOHN S. SARGETIS**
Attorney for Plaintiffs-Appellants

33

## CERTIFICATE OF COMPLIANCE
## With Type-Volume Limitation, Typeface Requirements,
## and Type Style Requirements
[Fed. R. App. P. 32(a)(7)(B)]

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 8,033 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word for Windows, in Times New Roman, 14 point type.

Dated: October 25, 2013          **UNITED LAW CENTER**

By:    /s/ John S. Sargetis
       **JOHN S. SARGETIS**
       Attorney for Plaintiff-Appellant

34

9th Circuit Case Number(s)

12-17816

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

**************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)

October 25, 2013 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)

/s/Tina M. Levitt

**************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)

.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)